USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 10, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

UNITED STATES OF AMERICA  :

: 1: (S1) 12 Cr. 368 (PAC)

- against -  :

: ORDER

HOWELL MILLER a/k/a "Charlie," a/k/a "C," a/k/a :
"C-Rock," and MICHAEL WALKER a/k/a "Mikey"

:

Defendants.  :

------------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

The indictment filed on May 7, 2012, charges defendant Howell Miller ("Miller") and his co-defendant, Michael Walker ("Walker"), with conspiring to distribute and possess with the intent to distribute 1,000 kilograms or more of marijuana in violation of 12 U.S.C. § 846. On December 4, 2012, the government filed a superseding indictment specifying that the alleged conspiracy dates back to 2002. Trial is scheduled to begin on December 10, 2012.

On December 6, 2012, the Government filed a motion *in limine* to admit evidence of uncharged conduct as either (1) direct proof of the conspiracy, or, alternatively, as (2) evidence pursuant to Fed. R. Evid. 404(b). The Government's motion is denied.

## BACKGROUND[1]

This motion concerns the expected testimony of two cooperating witnesses, "CW-2" and "CW-3". CW-2 is expected to testify that he was a member of the charged conspiracy; he began

---

[1] The facts described are taken from the memorandum of law filed by the Government in support of its motion.

transporting marijuana for the Defendants in approximately 2002. He will testify that he did so until his arrest in May 2010 for transporting approximately 2,000 kilograms of marijuana. His testimony includes that Miller had also spoken with him about transporting cocaine, but CW-2 refused.

CW-3 is expected to testify that he sold both marijuana and cocaine from 2003 until his arrest in 2010. CW-3 was Walker's friend, knew him as a large-scale narcotics trafficker, and witnessed individuals unloading marijuana into a store controlled by Walker. Though CW-3 and Walker did not typically work together, they frequently discussed the narcotics trade. In 2010, CW-3 purchased 35 kilograms of cocaine, five kilograms of which were to be distributed by Walker in or around New York. CW-3 was arrested after attempting to rob the purported source of the cocaine, who was actually an undercover law enforcement agent.

The Government now moves to introduce testimony by CW-2 and CW-3 regarding their conversations with Miller and Walker, respectively, regarding cocaine.

## DISCUSSION

"'Under the inclusionary approach to [Fed. R. Evid. 404(b)], such evidence [of prior bad acts] is admissible for any purpose other than to show a defendant's criminal propensity.'" U.S. v. Pitre, 960 F.2d 1112, 1118-19 (2d Cir. 1992) (quoting U.S. v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Nevertheless, "under Fed. R. Evid. 403, such evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Id. In order to assess the admissibility of prior bad acts under Rule 404(b), district courts must engage in a four-step process. "First, the district court must determine if the evidence is offered for a proper purpose." Id. at 1119. Second, the court "must next determine if the evidence is relevant to an issue in the case." Id. Third, the court looks to "whether its

probative value is substantially outweighed by the danger of unfair prejudice." Id. "Finally, upon request, the district court must give an appropriate limiting instruction to the jury." Id.

The Government asserts that the proffered evidence "should be admitted to complete the story of the charged conspiracy – that is, to describe the relationship and mutual trust between Miller and CW-2 and between Walker and CW-3, and to place the defendants' conduct in an understandable context for the jury." Gov't's Br. at 4. It is well established that these are proper grounds for the admission of evidence under Rule 404(b), and that such evidence is relevant. Pitre, 960 F.2d at 1120; U.S. v. Roldan-Zapata, 916 F.2d 795, 504 (2d Cir. 1990). Additionally, "[w]here a defendant's intent or knowledge is clearly at issue" – such as where the Government must show that defendants "knowingly or intentionally conspired to distribute [narcotics], or to possess it with intent to distribute it" – prior bad acts "may be admissible to prove intent or knowledge" because "evidence of their involvement in [other] narcotics transactions [is] probative of their intent or knowledge in connection with the crime charged."[2] Pitre, 960 F.2d at 119.

The proffered evidence, however, is more prejudicial than probative. The Government asserts that "[t]he Superseding Indictment charges the defendants with violating the narcotics laws; cocaine distribution is merely a separate objective of the conspiracy." Gov't's Br. at 7. If the Government wished to charge the Defendants with conspiring to traffic in cocaine, it had almost one year to do so. But the Superseding indictment, filed on the eve of trial, specified "[t]he controlled substance involved in the offense was . . . marijuana." Superseding Indictment at 2. It does not mention cocaine, allegations of which are far more sensational and

---

[2] "'[A] defendant may completely forestall the admission of . . . other act evidence on the issue of intent by express[ing] a decision not to dispute that issue,'" U.S. v. Colon, 880 F.2d 650, 657 (2d Cir. 1989) (quoting U.S. v. Ortiz, 857 F.2d 900, 903-04 (2d Cir. 1988)), but neither Miller nor Walker have done so here.

inflammatory. See, e.g., U.S. v. Milbrand, 58 F.3d 841, 848 (2d Cir. 1995) ("marijuana is not regarded as being as dangerous as, e.g., cocaine"); U.S. v. Qayyem, No. 10 Cr. 19, 2012 WL 92287, at *2 (S.D.N.Y. Jan. 11, 2012) (United States Sentencing Commission's marijuana-equivalency determinations – specifically, that crimes involving 1 gram of cocaine are as serious as those involving 200 grams of marijuana – are based, in part, on determinations regarding the relative level of danger posed by different drugs).

Furthermore, the Government's showing on the probative value of CW-2 and CW-3's cocaine-related testimony has been minimal. CW-2's involvement in, and CW-3's knowledge of, the Defendants' marijuana-based conspiracy are entirely unrelated to the proffered evidence regarding cocaine. While evidence of "how a criminal relationship developed" or which otherwise may "help the jury to understand the basis for the co-conspirator's relationship of mutual trust" may be relevant, U.S. v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996), the Government has not explained why testimony related solely to the Defendants' activities involving marijuana are inadequate for this purpose, nor how testimony related to cocaine is better suited to that task. In particular, it has failed to specify when CW-2 discussed cocaine with Miller, stating only that it occurred "during the time in which they conspired together," Gov't's Br. at 2, and it has described CW-3's agreement to distribute cocaine with Walker as occurring in 2010. Id. at 3. It is therefore unclear how either of these events are remotely related to the establishment of a conspiracy that dates back to 2002. Accordingly, the proffered evidence is inadmissible under Fed. R. Evid. 403.

Alternatively, the Government asserts that it should be permitted to elicit the witness's testimony in order to "'avoid the appearance that it is concealing impeachment evidence from the jury.'" Id. at 6 (quoting U.S. v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991)). This argument is

4

unavailing. CW-3 was arrested after attempting to rob an undercover law enforcement officer from whom he planned to purchase 35 kilograms of cocaine. Should Defendants wish to cross-examine him regarding his incentives for cooperating with and testifying on behalf of the Government, his arrest alone provides ample grounds for impeaching his credibility without opening the door to suggestions that Walker was involved in his plans to distribute cocaine. With regard to CW-2's discussion of cocaine with Miller, CW-2 refused to transport cocaine during the marijuana conspiracy. He can hardly be impeached for declining to transport drugs or for failing to be arrested for doing so. See Def.'s Opp'n at 2.

### CONCLUSION

For the foregoing reasons, the Government's motion is denied.


Dated: New York, New York

      December 10, 2012

                                      SO ORDERED

                                      PAUL A. CROTTY

                                      United States District Judge