USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

HOWELL MILLER,

        Petitioner,

  -against-

UNITED STATES OF AMERICA,

        Respondent.

12 Cr. 368 (PAC)
16 Civ. 8927 (PAC)

**OPINION & ORDER**

------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

*Pro se* Petitioner Howell Miller ("Miller") plead guilty to a superseding indictment charging him with conspiring to distribute and to possess with intent to distribute 1,000 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii). The statutory maximum for this crime is life imprisonment; and the guidelines (as finally determined) called for a sentence of 151 to 188 months. Miller was sentenced to 144 months imprisonment and ten years of supervised release. On appeal, the Second Circuit affirmed the sentence as reasonable.

Miller now moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his conviction and sentence, asserting ineffective assistance of counsel. Specifically, Miller argues that (1) his appellate counsel was ineffective by failing to challenge the Court's acceptance of Miller's guilty plea, based on Miller's contention that the Court lacked a factual basis for doing so; (2) his appellate counsel was ineffective by failing to argue that the Court violated Federal Rule of Criminal Procedure 32(i)(1)(A), based on Miller's assertion that the Court failed to verify that Miller had reviewed and discussed the pre-sentence report ("PSR") with his trial counsel; (3) his trial counsel was ineffective in failing to object to the amount of marijuana used to calculate his base Offense Level; and (4) his

1

appellate counsel was ineffective by failing to argue that the sentence violated Miller's Sixth Amendment right to a jury trial.

The Court DENIES the motion. Miller's claims are meritless; the claims are contradicted by the record; and there is no need for a hearing.

## BACKGROUND

From 2002 to 2012, Miller was a leader in a conspiracy to transport marijuana by the ton from Arizona to the Bronx, New York, and to distribute it to customers in the New York area. *See* Plea Tr. at 11:12–12:5. In 2005, Miller purchased a trailer to transport the marijuana; in 2010, law enforcement seized one of his trucks, as well as 4,400 pounds of marijuana it contained. PSR ¶¶ 12, 18. In January 2011, Miller traveled to Arizona to examine a load of marijuana; Miller wanted to transport 1,220 to 1,500 pounds, but his associate only had 700 pounds available. *Id.* ¶ 13. In February 2011, Miller received 2,000 pounds of marijuana and sold 200 pounds from that shipment to a co-conspirator at $900 per pound. *Id.* ¶ 17. On March 8, 2012, Miller was arrested. *Id.* ¶ 20. The Government determined that the approximate amount of marijuana in the ten year conspiracy attributable to Miller was more than 10,000 kilograms, but less than 30,000 kilograms. *Id.* ¶ 25.

On December 10, 2012, the day jury selection was set to begin, Miller informed the Court that he wished to change his plea and instead plead guilty to the superseding indictment; confirmed that he understood the consequences of pleading guilty and had discussed them with his lawyer, including the rights he was waiving; and testified that he was satisfied with his lawyer's counsel, advice, and representation. *See* Plea Tr. at 4:18–6:16; 13:20–14:2. Miller also confirmed that he had had an opportunity to review with his counsel the Government's Pimentel letter, dated December 10, 2012. *Id.* at 6:17–23.

The Court reviewed the contents of the Pimentel letter with Miller; explained the nature of the offense to which Miller would plead guilty; and confirmed Miller's understanding that the crime's maximum penalty was life imprisonment. *Id.* at 6:24–7:5. The Court also stated that Miller's sentencing guideline Offense Level was 34 and confirmed that Miller understood its manner of calculation. *Id.* at 8:9–14. The Court further confirmed that Miller had reviewed the criminal history categories and that he believed them to be accurate. *Id.* at 8:15–20. The Court then explained and confirmed Miller's understanding that, based on Miller's criminal history, his Criminal History Category was III, resulting in a sentencing range of 188 to 235 months' imprisonment; and that Miller would be subject to a 240 month mandatory minimum, due to a prior felony information filed based on Miller's prior felony narcotics conviction. *Id.* at 8:21–10:1.

The Government then reviewed the elements of the charged conspiracy, as well as its proof of the elements. *Id.* at 11:12–12:16. Thereafter, Miller allocated to his conduct and entered a guilty plea to the superseding indictment. *Id.* at 12:23–14:2. The Court found Miller fully competent and capable of entering an informed plea; concluded that the plea was "knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the offense;" and accepted the plea. *Id.* at 14:4–13.

On May 1, 2014, the Government moved to dismiss the prior felony information. *See* Nolle Prosequi. The Court granted the motion on May 12, 2014, reducing Miller's mandatory minimum from 20 years to 10 years. *See id.*; Sentencing Tr. at 2:2–5.

Sentencing was held on May 21, 2014. The Court confirmed that Miller still wanted to proceed with sentencing without the benefit of an updated PSR reflecting the dismissal of the prior felony information. Sentencing Tr. at 2:2–24. Miller's counsel stated that there was no need to update because the only change that the dismissal created was the reduction in the mandatory

3

minimum from 20 years to 10 years. *Id.* The Court adopted the PSR's calculations of Offense Level 34 and Criminal History Category III, resulting in a guideline range of 188 to 235 months' imprisonment. *Id.* at 3:2–11. Taking into account an anticipated two-level reduction, based on the predicted guidelines amendment, the Court found that Miller's guideline range was 151 to 188 months. *Id.* at 20:5–11. The Court sentenced Miller to 144 months' imprisonment and ten years of supervised release. *Id.* at 21:2–3. On direct appeal, the Second Circuit affirmed the sentence imposed by the Court. *See* Mandate of USCA at 5.

Miller now moves under 28 U.S.C. § 2255, asserting ineffective assistance of counsel. Miller argues that: (1) his appellate counsel was ineffective in failing to argue that the District Court erred in accepting Miller's guilty plea, without first determining under Fed. R. Crim. P. 11(b)(3) that there was a factual basis for the plea; (2) his appellate counsel was ineffective in failing to argue that the District Court violated Fed. R. Crim. P. 32(i)(1)(A); (3) his trial counsel was ineffective in failing to object to the amount of marijuana used to calculate Miller's base Offense Level; and (4) relatedly, that his appellate counsel was ineffective in failing to argue that the sentence violated his Sixth Amendment right to a jury trial. Miller Mem. at 9.

## DISCUSSION

I. **Legal Standards**

A. **Ineffective Assistance of Counsel**

To establish an ineffective assistance of counsel claim, a defendant-petitioner must make two showings: (1) "that counsel's performance was deficient" and "fell below an objective standard of reasonableness" according to "prevailing professional norms," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

Under the first requirement, the court considers "all the circumstances" and "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89. The court must bear in mind that "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689.

Under the second requirement, a defendant-petitioner must demonstrate "that counsel's errors were so serious as to deprive the defendant of a fair trial" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693; *see Harrington v. Richter*, 562 U.S. 86, 110 (2011) ("[A]n attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."). To establish prejudice, the Second Circuit "requires some objective evidence other than defendant's assertions." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

### B. § 2255 Evidentiary Hearings

Under 28 U.S.C. § 2255(b), a petitioner is entitled to a prompt hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled no relief." "A defendant seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he

5

has a "plausible" claim.'" *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)). A defendant is not "automatically entitle[d]," however, to a hearing by simply filing a § 2255 motion. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). Indeed, where a petitioner makes only "vague, conclusory, or palpably incredible [] allegations," a hearing is not required. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Rather, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131. Courts "need not assume the credibility of factual assertions . . . where the assertions are contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214. Moreover, "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor*, 647 F.3d at 494 (2d Cir. 2011).

## II. Analysis

### A. Appellate Counsel's Failure to Challenge Guilty Plea

Miller claims that his appellate counsel deprived him of effective assistance by failing to argue that the Court erred in accepting his guilty plea without first determining that there was a factual basis for the plea. Miller Mem. at 9. Miller claims that the Court "lacked a factual basis to accept his plea to the prescribed drug quantity of 10,000 kilograms or more of marijuana which triggered a base [O]ffense [L]evel of 36," because he only allocuted responsibility for 1,000 kilograms or more. *Id.* at 12. This is not an accurate account of the proceeding, and is contradicted by the record.

Miller was charged with violating 21 U.S.C. §§ 846 and 841(b)(1)(A). The elements of the charged drug conspiracy are: (1) there was a conspiracy; (2) the defendant had knowledge of the conspiracy; (3) the defendant intentionally joined the conspiracy; and (4) it was either known or

6

reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged. *See United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008); Plea Tr. at 11:12–21.

The Government recited the elements of the charged crime and then summarized its proof of these elements, including witness testimony as well as physical evidence. *See* Plea Tr. at 11:12–12:16. After hearing the Government's offer of proof, Miller confirmed his participation in the drug conspiracy:

> The Court: Mr. Miller, could you tell us in your own words what you did?
> The Defendant: Basically, your Honor, in or about 2002 to 2012 I conspired with others to distribute one thousand kilograms of marijuana or more, and that's pretty much it.
> The Court: Did you move – did you agree with other people to move the marijuana from Mexico and Arizona into New York?
> The Defendant: Not from Mexico, but from Arizona to New York.
> The Court: From Arizona. Was that truckload quantities?
> The Defendant: Yes.
> . . .
> The Court: Mr. Miller, did you join make this agreement knowingly and intentionally?
> The Defendant: Yes.

*Id.* at 12: 21–13:15.

On this basis, the Court found that the guilty plea was "supported by an independent basis in fact containing each of the essential elements of the offense." *Id.* at 14:4–13. The Government's explanation plus Miller's allocution clearly established the factual basis for the plea, as required by Fed. R. Crim. P. 11(b)(3). The fact that Miller was subsequently sentenced based on the Court's separate finding that the amount of marijuana during the ten year life of the conspiracy attributable to Miller was at least 10,000, but less than 30,000, kilograms has no bearing on the separate factual basis the Court found for accepting his guilty plea for the charged offense of conspiracy to distribute and possess with intent to distribute 1,000 kilograms and more of marijuana.

The Court did not err in finding a factual basis for accepting Miller's guilty plea; and there was no basis for Miller's appellate counsel to raise this argument on appeal. Accordingly, Miller's

ineffective assistance of counsel claim on this issue fails because his appellate counsel's performance was reasonable and did not prejudice his defense. *See Strickland*, 466 U.S. at 687–88.

## B. Appellate Court's Failure to Argue that the Court Violated Fed. R. Crim. P. 32(i)(1)(A)

Miller next argues that the Court did not comply with Fed. R. Crim. P. 32(i)(1)(A) by failing to verify that Miller had reviewed and discussed the PSR with his counsel; and that his appellate counsel was ineffective in failing to argue this on appeal. Miller Mem. at 19. Rule 32(i)(1)(A) provides: "[a]t sentencing, the court must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." Fed. R. Crim. P. 32(i)(1)(A).

The transcript of the sentencing proceeding demonstrates the falsity of this argument. At the start of Miller's sentencing, the Court stated:

> The Court: I have a letter from the government dated May 20th in which they advised me that they are dropping the prior felony information so that the guidelines no longer call for a mandatory minimum of 20 years.[1] And, Ms. Hill, I want to confirm that you want to proceed with sentencing today without the benefit of a revised presentence report; is that correct?

Sentencing Tr. at 2:2–18. Miller's counsel responded "Yes, your Honor;" and added that the only change from the April 2013 PSR would have been the mandatory minimum reduction from 20 to 10 years. *Id.* at 2:13–19. The Court then asked: "And you've talked about this with Mr. Miller?" *Id.* at 2:20–21. Counsel responded that she had. *Id.* at 2:22. The Court asked: "He's in agreement?" *Id.* at 2:23. Counsel responded "Yes, your Honor." *Id.* at 2:24.

Fed. R. Crim. P. 32(i)(1)(A) does not require direct questioning of the defendant; "[t]he district court may draw reasonable inferences about whether the defendant has had an opportunity to review the [presentence investigation report] and to discuss it with counsel." *United States v. Cortez*,

---

[1] Miller's trial counsel, Ms. Hill, was cc'ed on this letter.

8

841 F.2d 456, 460–461 (2d Cir. 1988); *see also United States v. Beyer*, No. 97–1713, 1998 U.S. App. LEXIS 31782, at *3–4 (2d Cir. Dec. 23, 1998) (holding that there existed sufficient evidence to support a reasonable finding that defendant had opportunity to review PSR and discuss it with his counsel because defendant's counsel stated that they had "extensive conversations" about PSR and defendant indicated his satisfaction with his counsel's representation).

The Court's questioning and counsel's responses provided a sound basis for the conclusion that Miller had a sufficient opportunity to review and discuss the PSR with his counsel. Miller's claim is not plausible; his claim of ineffective assistance by his appellate counsel in failing to argue that the Court violated Rule 32(i)(1)(A) is meritless. *See Puglisi*, 586 F.3d at 213; *Strickland*, 466 U.S. at 687–88.

### C. Trial Counsel's Failure to Object to Base Offense Level Calculation

Miller's next claim is that his trial counsel deprived him of effective assistance by failing to object at sentencing to the amount of marijuana used to calculate his base Offense Level, 10,000 to 30,000 kilograms, which he claims resulted in a longer sentence than that which he would have received had his level been calculated based on the 1,000 kilograms to which he allocated in his plea. Miller Mem. at 21. There is no basis for this argument; it confuses the charged offense in the indictment, with the facts of the actual offense.

The Government's Pimentel letter stated: "[p]ursuant to U.S.S.G. 2D1.1(a)(5) and 2D1.1(c)(2), because the offense involved at least 10,000 kilograms but less than 30,000 kilograms of marijuana, the base [O]ffense [L]evel is 36." Pimentel Letter at 2. A two-level reduction was appropriate for Miller's "acceptance of responsibility." *Id.* The Pimentel letter set the Offense Level at 34 and set Miller's Criminal History Category at III, resulting in a guidelines range of 188 to 235 months' imprisonment, with a mandatory minimum of 240 months. *Id.* at 2–4. The plea hearing

transcript confirms that the contents of the Pimentel letter were thoroughly reviewed with Miller; that he had an opportunity to review the calculations and understood them; and that he did not voice any objections:

> The Court: Now did [trial counsel] explain to you how the offense level was calculated?
> The Defendant: Yes, I'm familiar with it, sir.
> The Court: And you see that the guidelines offense level is 34?
> The Defendant: Yes.
> And did you review the criminal history categories set forth in pages 2 and 3?
> The Defendant: I have, sir.
> The Court: And 4, I guess. Is that an accurate statement of your criminal history?
> The Defendant: Yes.
> The Court: And this results in a criminal history category of three, so that the guidelines sentencing range is 188 to 235 months with a mandatory minimum of 240 months. Do you understand?
> The Defendant: Yes, sir.
> ...
> The Court: Mr. Miller, because the government – at the bottom of page 1 of the Pimentel letter to [trial counsel], the government filed a prior felony information arising from the defendant's conviction on or about August 18, 1987. This results in an enhanced penalty provision of Title 21, U.S. Code, 851 and 841, so the subject of the mandatory term of imprisonment is at least 240 months. Do you see that?
> The Defendant: Yes, sir.
> The Court: That's 20 years. Do you understand?
> The Defendant: Yes.
> The Court: And [trial counsel] has explained all that to you?
> The Defendant: Yes.

*Id.* at 8:9–9:23. The Government made its offer of proof substantiating this finding. *See id.* at 11:22–12:16. Specifically, the Government would establish at trial:

> [T]that the defendant was one of the leaders of this organization who transported or was responsible for transporting ton-size loads of marijuana from Arizona to the New York area to a body shop in the Bronx, as well as other locations, and this defendant then distributed with others to customers in the New York area.
> The evidence at trial would come in the form, as I mentioned, [of] law enforcement witnesses. Cooperating witnesses who were members of this conspiracy would testify to the defendant's involvement. We would also have a recording that was done by one of the cooperating witnesses in which this defendant admitted to certain loads, including a load that was seized in Arizona containing 4400 pounds of marijuana.
> The evidence would also contain the results of a search conducted at the defendant's apartment when he was arrested in March 2012 that was consistent with, again, narcotics trafficking.

10

*Id.* at 11:25–12:16.

The PSR was issued on April 25, 2013, and recited essentially the same facts in support of the guidelines calculation as the Pimentel letter. At sentencing, Miller declined the opportunity to make any corrections, and so the Court adopted the facts of the PSR as accurate. Sentencing Tr. at 3:2–6. The Court also asked about the calculations of an Offense Level of 34, Criminal History Category of III, and guideline range of 188 to 235 months' imprisonment. *Id.* at 3:7–10. Once again, Miller raised no objections; and the Court accepted the calculations. *Id.* at 3:11–12.

The 1,000 kilogram amount of marijuana to which Miller plead guilty of conspiring to distribute and possess with intent to distribute, Plea Tr. at 6:24–7:2, does not limit other information the Court may consider for sentencing purposes. "As a general rule, a district judge has discretion to consider a wide range of information concerning a defendant's background in arriving at an appropriate sentence." *United States v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987). In *United States v. Copeland*, although the defendant was only charged with responsibility for, and plead guilty to, attempted distribution of three vials of crack, the sentencing court determined that his "relevant conduct . . . would have made him legally responsible for the entire inventory" of 63 vials; and calculated his imprisonment range using this larger quantity. 902 F.2d 1046, 1048 (2d Cir. 1990). In affirming, the Second Circuit confirmed that consideration of larger quantities for sentencing purposes is appropriate: "[t]he Guidelines consider conduct relating to quantities of drugs not mentioned in the charge to be relevant for sentencing purposes, whether or not conspiratorial, if it was part of the same 'course of conduct.'" *Id.* at 1049. It also rejected the defendant's argument that his due process rights were violated: the government had proffered evidence supporting the 63-vial quantity; the PSR informed the defendant that "the court would be asked to consider the 63 vials as

relevant conduct in determining his base offense level for sentencing;" and the defendant was provided opportunities to respond and/or withdraw his guilty plea. *Id.* at 1049–50.

The Court had discretion to sentence Miller to life imprisonment for the offense charged in the indictment (conspiracy with respect to 1,000 kilograms and more of marijuana). The guidelines provide for a more gradual approach so that the greater the amount of marijuana, the higher the sentence. Miller was informed of this: in the Pimentel letter, at his plea; in the PSR; and, for the fourth time, at his sentencing. *See* Pimentel Letter at 1; Plea Tr. at 8:12–14; PSR ¶ 34; Sentencing Tr. at 3:7–8. Miller did not raise any objections to these calculations at any time; nor could he.

In these circumstances, it was not unreasonable for his trial counsel to accept these calculations. Moreover, the Government proffered substantial evidence it would show to corroborate the finding that Miller was responsible for 10,000 to 30,000 kilograms; and the PSR further detailed these facts. *See* Plea Tr. at 11:22–12:16; PSR ¶¶ 8–21. To the extent that Miller suggests there has to be at least one 10,000 kilogram shipment, he is incorrect. It is reasonable to estimate that during the life of the 10-year conspiracy there would be numerous cargo shipments, totaling well in excess of 10,000 kilograms of marijuana.

Miller never objected to the Offense Level calculations used; and fails to present any factual evidence now to do so. There is no basis to challenge Miller's base Offense Level calculation. *Strickland*, 466 U.S. at 687–88. Accordingly, there is no support for Miller's claim for ineffective assistance against his trial counsel; and a hearing is not warranted. *See Puglisi*, 586 F.3d at 213.

### D. Appellate Counsel's Failure to Argue Violation of Sixth Amendment Right to a Jury Trial

Miller also claims that his appellate counsel was ineffective for failing to argue that Miller's sentence was imposed in violation of his Sixth Amendment right to trial by jury. Miller Mem. at 17.

This argument has no legal basis. The maximum penalty for the charge to which Miller plead guilty was life, and the Court imposed a sentence significantly below that.

Under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). For 21 U.S.C. § 841 offenses, drug types and quantities not charged in the indictment or found by a jury still "may be used to determine the appropriate sentence so long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged in the indictment and found by the jury." *United States v. Thomas*, 274 F.3d 655, 673 (2d Cir. 2001).

The maximum penalty for conspiracy to distribute and possession with intent to distribute 1,000 and more kilograms of marijuana is life imprisonment, which the Court advised Miller of at his plea hearing. Plea Tr. at 6:24–8:8. At sentencing, as set forth in the PSR, the Court confirmed that Miller's base Offense Level calculation was 34, resulting in a guidelines range of 188 to 235 months' imprisonment. Sentencing Tr. at 3:2–11. The Court ultimately imposed a sentence of 144 months' imprisonment and ten years' supervised release. *Id.* at 21:2–3. Because Miller's sentence was not only below the maximum penalty for the charges to which he plead guilty, but also significantly below the guidelines range, Miller's sentence did not violate his Sixth Amendment right to a jury trial. *See Thomas*, 274 F.3d at 673. Moreover, there was no additional "fact" found by the Court, other than Miller's prior conviction, that could have been submitted to the jury. *See Apprendi*, 530 U.S. at 490.

Thus, Miller's sentence did not violate the Sixth Amendment; therefore, Miller's appellate counsel neither acted unreasonably nor prejudiced Miller's defense. *See Strickland*, 466 U.S. at 687–88.

## CONCLUSION

The Court DENIES Petitioner Howell Miller's motion. As Petitioner has not "made a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court is directed to terminate all pending motions and close this case.

Dated: New York, New York
       August 1, 2017

SO ORDERED

/s/ Paul A. Crotty
PAUL A. CROTTY
United States District Judge

Copy mailed to:

Howell Miller
Register No. 25157-083
FCI McKean
6975 Route 59
Lewis Run, PA 16738