UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | 12-cr-368-PAC |
| - against - : | |
| : | **OPINION & ORDER** |
| HOWELL MILLER, : | |
| Defendant. : | |

------------------------------------------------------------------------X

On May 21, 2014, this Court sentenced Howell Miller ("Miller") to 12 years' (144 months') imprisonment upon his plea of guilty to conspiracy to distribute and possess with intent to distribute 1,000 kilograms and more of marijuana. Miller now moves *pro se* for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (the "Compassionate Release Statute") on the basis that (1) social distancing and proper hygiene measures cannot be effectively implemented at Federal Medical Center Devens ("FMC Devens"), where he is incarcerated; (2) Miller is a 50-year-old African-American former smoker; and (3) the combination of (1) and (2) poses a high risk that Miller will both contract COVID-19 and experience negative health effects from it. Miller also argues that his continued incarceration at FMC Devens is cruel and unusual punishment proscribed by the Eighth Amendment. For the reasons stated below, Miller's motion for compassionate release is DENIED.

## BACKGROUND

On December 10, 2012, Miller pled guilty to a conspiracy to traffic large quantities of marijuana. Tr. Plea Entry 6:24–7:3, 13:25–14:2, ECF No. 50. This conspiracy existed from 2002 to 2012. *Id.* at 7:2–3. Miller committed this offense while he was on supervised release. Presentence Investigation Report ("PSR") ¶ 79; Sent'g Tr. 6:21–23, ECF No. 66. This was not

1

the first time Miller violated the terms of his supervised release. He had previously been sentenced to 10 years' imprisonment for conspiring to distribute and possessing with intent to distribute cocaine and cocaine base, and another five years' imprisonment to run consecutively for possession of a firearm in relation to a drug trafficking offense. PSR ¶¶ 72–74. After being released, Miller committed another narcotics offense, which led the court to revoke his supervision and impose an additional 21 months' imprisonment. PSR at ¶ 75.

On May 21, 2014, this Court sentenced Miller to 144 months' imprisonment. The applicable Guidelines range was 188–235 months (Sent'g Tr. at 3:6–11; 20:7–8), but the Court considered that a pending law, if applied retroactively, would give Miller the benefit of a two-level reduction, leading to a range of 151–188 months (*id.* at 20:9–11, 20–21, 23:12–16, 22–23). The statutory minimum penalty for Miller's crime was 10 years' imprisonment. *Id.* at 9:8–11, 19:14–16. The Court decided that the mandatory minimum would not provide an appropriate sentence, given that Miller had previously violated his supervised release after serving a 10-year sentence. *Id.* at 20:16–20. "On the other hand," the Court said, "a sentence of 188 months or 151 months would be too much." *Id.* at 20:20–21. The Court considered that, because of Miller's age (44 years at the time of sentencing), he may pose little risk of recidivism. *See id.* at 20:24–21:1. But the Court also noted that Miller "had a couple of chances to get out, but . . . always get[s] thrown back in." *Id.* at 15:24–16:1. Additionally, the Court recognized that "this is not [a] routine marijuana [charge]," because Miller pled guilty to trafficking "10,000 to 30,000 kilos of marijuana." *Id.* at 6:17–19. Miller had engaged in a large-scale marijuana-trafficking conspiracy alongside his legitimate business, long after the folly of youth had faded behind him. *See id.* at 6:24–7:1, 10:20–11:2. Accordingly, the Court sentenced Miller to 144 months' imprisonment, followed by 10 years' supervised release. *Id.* at 21:2–3.

Miller has been in federal custody for the instant offense since March 7, 2012. Gov't Opp'n Mem. ("Opp'n Mem.") 5, ECF. No. 103 (citing PSR ¶ 20). Miller has been a good prisoner; he appears to have a clean prison record and has even been entrusted with the duties of an orderly, helping other prisoners. Def.'s Mot. for Compassionate Release ("Def.'s Mot.") 10, ECF No. 102; Reference Letter from Correctional Counselor M. Ford, contained within Reply to Opp'n Mem., ECF No. 104 ("Mr. Miller has presented himself as a model inmate. He has served as both an orderly and a companion within the prison . . . ."). He now requests compassionate release, arguing that COVID-19 poses a serious threat to his health at FMC Devens because he is a 50-year-old African-American former smoker. Def.'s Mot. at 2, 3, 4. The Government argues that the record is barren of any evidence to support Miller's claim that he is a former smoker, and in fact shows contrary evidence. Opp'n Mem. at 5. Thus, says the Government, Miller has failed to show extraordinary and compelling reasons warranting his early release, and the Court should deny his request. Opp'n Mem. At 2.

Miller has served approximately 113 months of his 144-month sentence; over two-thirds. Nevertheless, the Government argues that the full sentence is necessary to deter Miller and others from criminal conduct, protect the public from Miller, "reflect the seriousness of the offense . . . promote respect for the law, and to provide just punishment for the offense," given Miller's "history and characteristics" and the "nature and circumstances of the offense." Opp'n Mem. at 6 (quoting 18 U.S.C § 3553(a)).

# DISCUSSION

## I. Applicable Law

### A. *Pro Se* Motions

Courts must construe *pro se* filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Accordingly, courts must "interpret [*pro se* motions] to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### B. Compassionate Release Standard

The Compassionate Release Statute, in a limited exception to the general rule that prison sentences must lie undisturbed, permits a district court to "reduce the term of imprisonment" where the court finds "extraordinary and compelling circumstances." *United States v. Franco*, No. 12 CR 932 (PAC), 2020 WL 4344834, at *1 (S.D.N.Y. June 24, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before inmates can move for compassionate release in federal court, they must satisfy a statutory exhaustion requirement: inmates must "fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons [('BOP')] to bring a motion on the defendant's behalf or [wait for] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). After the defendant satisfies the exhaustion requirement by either route, the court may consider whether the defendant has shown "extraordinary and compelling circumstances" warranting a reduced sentence. *Id.* at § 3582(c)(1)(A)(i). The court must consider the applicable sentencing factors set

forth in § 3553(a), and if the court grants a sentence reduction, "such a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission."[1] *Id.* at § 3582(c)(1)(A). Accordingly, even if the defendant demonstrates extraordinary and compelling circumstances, the court may exercise its discretion to deny the motion if granting a sentence reduction would compromise the sentencing factors set forth in § 3553(a). *See United States v. Roberts*, No. 18 CR 528-5 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y. Apr. 8, 2020).

In evaluating whether extraordinary and compelling reasons exist, courts in this district have, considering COVID-19's impact, engaged in a fact-driven, case-specific analysis. This analysis includes, *inter alia*, the defendant's underlying health conditions and ability to adequately manage those conditions in prison, the defendant's age, "the proliferation and status of infections in the prison facility" (*United States v. Brady*, No. S2 18 CR 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)), and whether a "sentence reduction would be inconsistent with the factors enumerated in § 3553(a)." *United States v. Saxon*, 12 CR 320 (ER),

---

[1] Until recently, courts in this district determined that the applicable policy statement in evaluating whether extraordinary and compelling reasons exist is U.S.S.G. § 1B1.13 and its Application Notes. *See, e.g.*, *United States v. Wright*, No. 17 CR 695 (CM), 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (applying § 1B1.13 Application Note 1(A)(i) and denying relief); *United States v. Haney*, 454 F. Supp. 3d 316, 322 (S.D.N.Y. 2020) (finding no extraordinary and compelling reasons under § 1B1.13). *United States v. Brooker*, however, held that § 1B1.13 is not "applicable" to compassionate release motions that inmates bring directly in federal court, but rather is applicable "only to those motions that the BOP has made." 976 F.3d 228, 235–236 (2d Cir. 2020). Because § 1B1.13 is not applicable to compassionate release motions brought directly by defendants, neither it nor its Application Notes cabin the courts' discretion with respect to these motions; instead, courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237. No other applicable Sentencing Commission policy statements exist. *See id.* at 238 n.5. Only one statutory constraint narrows courts' discretion in this area: "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Id.* at 237–238 (quoting 28 U.S.C. § 994(t)). Consequently, courts have broad discretion in determining what constitute extraordinary and compelling reasons. *Id.* at 237.

2020 WL 4548078, at *3 (S.D.N.Y. Aug. 5, 2020); *United States v. Canales*, 16 CR 0212 (LAK), 2020 WL 2319294, at *3 (S.D.N.Y. May 9, 2020).

## II. Application

### A. Construction of the *Pro Se* Motion

The Court finds that Miller's *pro se* motion properly requests compassionate release under the Compassionate Release Statute.

### B. Compassionate Release Standard

#### 1. Exhaustion

The Government agrees that Miller has exhausted his administrative remedies. Opp'n Mem. at 1. Miller requested compassionate release from the BOP on June 30, 2020, and the acting warden denied his request on July 21, 2020. Def.'s Mot. Ex. A. Miller then appealed the denial on July 31, 2020, and the warden denied his appeal on August 24, 2020. *Id.* Therefore, Miller has exhausted his administrative remedies in satisfaction of the Compassionate Release Statute.

#### 2. Extraordinary and Compelling Reasons

Miller's personal characteristics do not support a finding of extraordinary and compelling reasons. Both his age and his race are factors to consider, but they do not constitute extraordinary and compelling reasons warranting Miller's early release. First, although Miller, at 50 years old, is more at risk of contracting COVID-19 (and experiencing ill health effects if he does contract it) than younger inmates, Miller is not in the highest at-risk age groups. *See United States v. Santana*, No. 15-CR-0457, 2021 WL 1999406, at *3 (E.D.N.Y. May 19, 2021) ("At age fifty-two, Defendant is in an age group that faces neither the lowest risk nor the greatest risk of severe illness from COVID-19 infection."); *United States v. Guerra*, No. 10-CR-147, 2020 WL

6700084, at *3 (E.D.N.Y, Nov. 13, 2020) ("At 55 years old, [the defendant] is not in the highest-risk age bracket for complications associated with the virus.").

Second, while it is true that COVID-19 may have a disproportionate effect on African-Americans, "so far as it is currently understood, that difference most probably owes to '[l]ong-standing systemic health and social inequities.'" *United States v. Leigh-James*, No. 3:15 CR 188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020) (quoting CDC, *COVID-19 in Racial and Ethnic Minority Grps.*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited July 15, 2020)). Accordingly, Miller's "race itself does not constitute a risk factor for COVID-19[] in the same way[] as, for instance, an underlying medical condition does." *Id.*; *see also United States v. Allums*, No. 15 CR 153 (VSB), 2020 WL 5796265, at *2, *4–6 (S.D.N.Y. Sept. 29, 2020) (finding no extraordinary and compelling circumstances where black defendant with hypertension and asthma did not show that he was more at risk in prison than at home in the Bronx).

Miller has not demonstrated that he suffers from medical conditions that put him at a higher risk of harm, either. Miller alleges that he "has pre-existing medical conditions that makes [sic] him vulnerable to contracting" COVID-19, which are "documented in the Presentencing Report." Def.'s Mot. at 4. The PSR, however, reveals no medical conditions that increase Miller's vulnerability to contracting COVID-19 or experiencing harmful effects from a COVID-19 infection. To the contrary, the PSR recounts that Miller "described his physical health as good and reported no past or present medical conditions." PSR ¶ 99. Additionally, in denying Miller's appeal of the denial of his request for compassionate release, Warden Boncher wrote Miller: "You do not have a significant medical history and [you] are not receiving chronic

medical care. You are independent with your activities of daily living . . . [,] and FMC Devens is able to manage your medical needs at this time." Def.'s Mot. Ex. A.

Miller argues more specifically that he is a former smoker, which can increase his risk of contracting COVID-19. *See* CDC, *Coronavirus Disease 2019—Smoking*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking (updated May 13, 2021).[2] But Miller provides no documentation demonstrating that he is a former smoker, and a thorough review of Miller's prison medical records do not substantiate that claim. Instead, Miller's 2018 medical screening indicates that he has no "[h]istory of hypertension and smoking," "[d]iabetes & smoking," ">65 yrs. and history of smoking," and no "[t]obacco abuse." Opp'n Mem. Ex. D at 1.[3]

Assuming for the sake of argument that Miller truly is a former smoker, his smoking does not appear to have resulted in any adverse health effects. *See Leigh-James*, 2020 WL 4003566, at *7 ("To the extent [defendant] suggests that his history as a smoker puts him at special risk, there is nothing in the record to suggest that his history of smoking (if he has one) has impacted his health."). Many courts in this circuit have found a lack of extraordinary and compelling reasons in cases similar to Miller's, even where the defendants had other medical conditions in addition to smoking histories. *See, e.g.*, *id.* (28-year-old African-American inmate at FMC Devens with alleged hypertension, anemia, and history of smoking); *United States v. Batista*, No. 18 CR 319 (LTS), 2020 WL 6132239, at *4 (S.D.N.Y. Oct. 19, 2020) (obese smoker); *Saxon*,

---

[2] "Being a current or former cigarette smoker can make you more likely to get severely ill from COVID-19."

[3] Because Exhibit D is Miller's prison medical records, it has been filed under seal. *See Hickson v. V.I.M. Store*, No. 20-CV-2974, 2020 WL 7042762, at *3 (E.D.N.Y. Dec. 1, 2020) ("Courts have specifically [found] that there is a recognized privacy interest in medical records, albeit one that is neither fundamental nor absolute.") (citation omitted).

8

2020 WL 4548078, at *3 ("Moreover, even if [the defendant] does have hypertension, being a smoker and having high blood pressure are common conditions and do not rise to the level of extraordinary and compelling . . . ."); *Canales*, 2020 WL 2319294, at *3 (inmate with asthma whose medical records showed he smoked four cigarettes per day); *United States v. Santiago*, No. 92-cr-563 (BMC), 2020 WL 4926470, at *1, *2 (E.D.N.Y. Aug. 21, 2020) (obese former "two-pack-a-day smoker" with heart problems who tested positive for COVID-19).

The Court concludes that even if Miller is a former smoker, his health condition, age, and race combined with the threat of COVID-19 do not constitute extraordinary and compelling reasons warranting his early release. Moreover, FMC Devens, as a medical facility, appears well-equipped to address Miller's medical needs, as the warden stated. *See United States v. Cabrera*, No. 05 CR 1278-2 (NRB), 2020 WL 4226637, at *1 (S.D.N.Y. July 23, 2020); *United States v. Arena*, No. 18 CR 14 (VM), 2020 WL 2571053, at *2 (S.D.N.Y. May 21, 2020).

Miller next argues that his continued incarceration at FMC Devens violates his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment imposes upon the warden "a duty to minimize serious risks of future harms, including exposure to and spread of communicable diseases." *Lagan v. Edge*, No. 20-CV-2221 (AMD), 2020 WL 3403109, at *3 (E.D.N.Y. June 19, 2020). Miller alleges that Warden Spaulding has violated that duty by "demonstrat[ing] deliberate indifference to the severe and obvious risk of rampant infection and death that COVID-19 poses to FMC Devens prisoners, in violation of the . . . Eighth Amendment prohibition against cruel and unusual punishment." Def.'s Mot. at 7. This claim is principally based on Miller's assertion that inmates at FMC Devens are unable to reduce their risk of COVID-19 infection through physical distancing, rendering FMC Devens "a powder keg of potential infection." Def.'s Mot. at 6; *see also* Reply to Opp'n Mem. at 2–3.

9

But Miller's Eighth Amendment arguments challenging the conditions of his confinement are properly brought in a habeas petition under 28 U.S.C. § 2241, not a motion for compassionate release. *United States v. Stitsky*, No. 06-CR-357 (KMW), 2020 WL 7488065, at *2 n.4 (S.D.N.Y. Dec 14, 2020); *United States v. Zehner*, No. 19 Cr. 485 (AT), 2020 WL 3057759, at *2 (S.D.N.Y. June 8, 2020).[4] Moreover, this Court lacks the jurisdiction to determine a § 2241 petition, should Miller file one, because a § 2241 petition must be brought in the district of confinement. *Zehner*, 2020 WL 3057759, at *2; *accord United States v. Haney*, 454 F. Supp. 3d 316, 325–26 (S.D.N.Y. 2020). Because Miller is incarcerated at FMC Devens, he would need to file his § 2241 motion in the District of Massachusetts.

To the extent that Miller argues FMC Devens' response to COVID-19 is an extraordinary and compelling reason to grant a sentence reduction apart from any Eighth Amendment claim, the record contains ample evidence that FMC Devens has successfully deployed safety measures for the benefit of its inmates. Indeed, the BOP has implemented a plethora of safety measures to counter the risks COVID-19 poses. Most recently, the BOP began its Phase Nine Action Plan, which extended prior measures including quarantining inmates, testing new intakes for COVID-19 upon arrival, and unannounced site visits to ensure compliance with COVID-19 measures. Opp'n Mem. at 5; *id.* at Ex. B 1, 5, 6. The Phase Nine action plan also indicates that inmates "should wear face coverings . . . and should perform hand hygiene (washing hand [sic] with soap and water or using hand sanitizer) just before and after in-person [legal] visits." Opp'n Mem. Ex. B at 2.

---

[4] *See also United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("Although the Court has the discretion to determine what qualifies as an extraordinary and compelling reason, the Court believes that it would be both improper and inconsistent with the First Step Act to allow [the defendant] to use 18 U.S.C. § 3582(c)(1)(A) as a vehicle for claiming legal wrongs, instead of following the normal method[] of . . . a habeas petition.").

These preventative measures appear to be working at FMC Devens. *United States v. Perry*, No. 16 CR 221 (BMC), 2020 WL 5116155, at *2 (E.D.N.Y. Aug. 31, 2020) ("Although FMC Devens historically has had nearly sixty cases, it presently has only three. This suggests that BOP's mitigation measures are working."). Miller wrote on December 29, 2020, that FMC Devens had 220 positive cases (Def.'s Letter, ECF No. 105), but that number subsequently decreased, and as June 24, 2021, FMC Devens (like most BOP facilities) reports zero active cases of COVID-19 among its inmates and staff. BOP, *Covid-19 Cases*, https://www.bop.gov/coronavirus/ (last visited June 24, 2021). Additionally, 630 inmates and 350 staff at FMC Devens have been fully vaccinated against COVID-19. *Id.* (under "COVID-19 Vaccine Implementation," click "Learn more about vaccinations and view individual facility stats," then scroll down to "Devens FMC").

Given Miller's lack of risk factors that would put him at higher risk than others, Miller's failure to prove that FMC Devens cannot manage his medical needs, and the BOP's response to COVID-19, the Court finds that Miller has not presented extraordinary and compelling reasons warranting a sentence reduction.

Finally, Miller argues that since his conviction, many states have legalized marijuana to various degrees, and that were Miller sentenced today, "he could [be] sentenced to less than 144-months, under these [state laws] and 3553(a) factors." Def.'s Mot. at 17–18. This argument fails for two reasons: (1) courts should not use a motion for compassionate release as a vehicle "to 'correct' the sentencing court's original judgment" (*United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020);[5] and (2) even if the Court revisited the propriety of the sentence it

---

[5] Even at the time he was sentenced, Miller could have received less than 144 months' imprisonment; the statutory minimum was 120 months' imprisonment. But the Court decided that a sentence of 144 months was appropriate, and has not changed its mind in the meantime.

imposed on Miller, the fact that certain *states* have legalized marijuana use in the interval is irrelevant, because conspiracy to possess and distribute thousands of kilograms of marijuana remains illegal under the *federal* law Miller violated.

### 3. § 3553(a) Factors

Because the Court finds no extraordinary and compelling reasons in this case, the Court need not address whether the § 3553(a) factors counsel against granting Miller's motion for compassionate release. But even if Miller had established extraordinary and compelling reasons, his release would not be warranted at this time. Given his history of drug offenses, the long-running nature of the conspiracy for which he is currently incarcerated, and the fact that Miller committed the instant offense while he was on supervised release, the full term of 144 months' imprisonment remains "sufficient, but not greater than necessary" to satisfy the purposes of the sentencing factors set forth in § 3553(a).

## CONCLUSION

Miller's motion for compassionate release is DENIED without prejudice as to its renewal should his health or the conditions at FMC Devens materially worsen.

The Clerk of Court is directed to close the motion at ECF number 102.

Dated: New York, New York  
       July 1, 2021

SO ORDERED

*/s/ Paul A. Crotty*

HONORABLE PAUL A. CROTTY  
United States District Judge